## Estates of Sewell W. and Reba Hodge

*William T. Wilson*, for Locators Inc.
*Joseph S. Hocky*, for Richard G. Hodge Jr.

WOOD, *P.J.*, November 10, 1994—Sewell W. Hodge and Reba C. Hodge both died, leaving estates whose overall value is not of primary importance here. What is of importance is that they left a nephew, Richard G. Hodge Jr., whom both of them named as a beneficiary in their respective wills. For a period of time, Richard G. Hodge Jr. could not be located, and so his share under the wills was paid over to the Commonwealth pursuant to section 3540(a) of the PEF Code, 20 Pa.C.S. §3540(a).

A firm known as Locators Inc., whose principal office is in Virginia, decided to take a speculative run at locating heirs of estates in Pennsylvania which had escheated beneficiaries' shares under section 3540(a). Locators Inc. did in fact find Richard G. Hodge in upstate New York, and contacted him, and tried to interest him in sharing a portion of his legacy with Locators. Locators did not inform Hodge what he was entitled to, and from whom, and was not about to do so until Hodge executed some sort of agreement with the corporation.

Hodge declined. When he was contacted, he realized what had happened: Uncle Sewell and/or Aunt Reba had died, and he had money coming to him. He made short work of discovering the true nature of the situation, and presented a claim to the estate himself.

Hodge is now before me asking me to order that his legacy be paid over to him. Locators Inc. is now before me asking that they be compensated for the time that they put into locating Hodge.

Nobody has opposed Mr. Hodge's claim, and I will accordingly authorize him to collect his legacy from the Commonwealth. Hodge, however, resists the notion that he should share any portion of that legacy with Locators Inc. Locators apparently does not ask to recover its fee from the estate, and the estate did not appear through counsel at the hearing.

I can conceive of only three possible reasons why someone in the position of Locators Inc. should be entitled to the share of the legacy of another, or to be paid for its services by the estate or by a beneficiary: (1) contract; (2) unjust enrichment; and (3) some sort of public policy. Locators stresses especially the last of these three reasons,

suggesting that otherwise legitimate legacies might go forever unpaid.

It is clear that there is no contract here between Locators and any of the other players in this drama. That fact alone is enough to distinguish it from *Atkinson Estate*, 20 D.&C.3d 700, 2 Pa. Fiduc. 2d 79 (1981), which both parties have cited to me. *Atkinson Estate* turns in large measure on the fact that the estate authorized the "heir hunter" to search out the missing heirs. It most assuredly does not stand for the proposition that an heir hunter who has not been authorized by the estate or by some other person should be paid for his, her, or its services.

In its brief, Locators Inc. also advances the notion of unjust enrichment. Unjust enrichment has recently been held to consist of: "(1) an enrichment; and (2) an injustice resulting if recovery for the enrichment is denied. ... In determining whether the doctrine applies, the most significant requirement for recovery is that the enrichment of the defendant is unjust." *Chesney v. Stevens*, 435 Pa. Super. 71, 77 n.4, 644 A.2d 1240, 1243 n.4 (1994). (citations omitted) I suppose, in a sense, the question of whether or not an enrichment is unjust, and whether or not there is a reason in policy for allowing a claim like this, are pretty much the same question.

My instinct rebels against either conclusion. I do not think that Mr. Hodge has been unjustly enriched, nor do I think it will advance any public policy known to me to authorize and encourage heir-locator services to comb the Commonwealth's list of escheats, and to bring heirs and estates together. That is the job of the estate's executor or administrator. I don't think that the fact that Locators Inc. alerted Mr. Hodge to the fact that his uncle

or aunt had died puts them in any better position. Mr. Hodge was entitled to his legacies, and in that sense, he has not been unjustly enriched. I don't believe that he acted unjustly towards Locators nor do I believe that Locators has any legitimate cause to complain. Its witness, and principal officer, Frederick Quarles III, acknowledged that he undertook the search "on spec."

At hearing, a question was raised about the authority of Locators Inc. to do business and to sue in the Commonwealth of Pennsylvania. In view of my conclusions, it is not necessary that I decide that issue. Nevertheless, in the event that my conclusion is reversed by some other court, I find that Locators Inc. is entitled to do business in the Commonwealth and to present the present claim in this court.

However, I must deny the claim of Locators Inc.

## ORDER

And now, November 10, 1994, I find that Richard G. Hodge Jr. is the heir of Sewell and Reba Hodge, as set forth in their wills, and that he is entitled to the legacies which had been paid into the State Treasury pursuant to section 3540 of the Probate, Estates, and Fiduciaries Code, and I authorize distribution to Richard G. Hodge Jr. of said legacies, in the amounts of $50,000 from the estate of Sewell Hodge and $2,000 from the estate of Reba Hodge respectively, along with whatever interest may have accrued and less any deductions which the Commonwealth of Pennsylvania may be entitled to take.

I dismiss the claim of Locators Inc. insofar as it seeks to recover fees either from Richard G. Hodge Jr. or the estates of Sewell and Reba Hodge.